IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| EMILY JOHNSON, | 3:11-cv-00432-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| SCOTT GIBSON, and ROBERT STILLSON, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Emily Johnson ("Johnson") alleges a negligence claim, under Oregon law, against Defendants Scott Gibson and Robert Stillson (collectively "Defendants") and seeks economic and noneconomic damages. Defendants move to dismiss Johnson's claim pursuant to Federal Rule of

OPINION AND ORDER         1         {WSB}

Civil Procedure ("Rule") 12(b)(1) for lack of diversity jurisdiction.[1] For the reasons explained below, Defendants' motion is denied.

*Background*

On July 16, 2009, Johnson, who is visually impaired, fell while jogging in Tom McCall Waterfront Park (the "Accident"). The City of Portland is a municipal corporation that owns and operates Tom McCall Waterfront Park and has responsibility for repair and maintenance of its parks, its grounds, and its facilities. Defendants were City of Portland employees responsible for conditions that Johnson alleges resulted in her injury.

On February 3, 2010, Johnson filed a complaint in federal court alleging that the City of Portland had violated the Americans with Disabilities Act ("ADA") and that Defendants were negligent under Oregon law. *Johnson v. City of Portland*, Case No. 3:10-CV-00117-JO ("*Johnson I*"). Johnson alleged that the court had subject matter jurisdiction under 28 U.S.C. § 1331 based on her ADA claim. On March 14, 2011, Judge Robert E. Jones granted summary judgment in favor of the City of Portland with respect to the ADA claim and dismissed Johnson's state negligence claim without prejudice. *Johnson v. City of Portland*, No. Civ. 10-117-JO, 2011 WL 900816, at *2 (D. Or. March 14, 2011).

Johnson filed the present complaint in federal court on April 6, 2011, alleging only a state negligence claim against Defendants ("*Johnson II*"). In her complaint in *Johnson II*, Johnson alleged that this court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

---

[1] The parties have consented to jurisdiction by magistrate in accordance with 28 U.S.C. § 636(c)(1).

*Legal Standard*

"Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799)). "The burden of establishing the contrary rests upon the party asserting the jurisdiction." *Id.* (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).

"Where a jurisdictional issue is separable from the merits of a case, the court may determine jurisdiction by the standards of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). To determine jurisdiction, the court may:

> hear evidence regarding jurisdiction and . . . rule on that issue prior to trial, resolving factual disputes where necessary. In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

*Id.* (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

Federal district courts have original jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1) (2006). "To show state citizenship for diversity purposes under federal common law a party must (1) be a citizen of the United States, and (2) be domiciled in the state." *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).

*Discussion*

Defendants argue the court lacks diversity jurisdiction for four reasons. First, Defendants note that the complaint filed in *Johnson II* does not allege an amount in controversy. Second,

Defendants argue Johnson was not domiciled in Washington at the time of filing *Johnson II* and cannot establish diversity of citizenship. Third, Defendants argue that if Johnson was domiciled in Washington at time of filing *Johnson II*, then she was domiciled in Washington at time of filing *Johnson I* as well, and is therefore banned by *res judicata* from proceeding in *Johnson II*. Fourth, Defendants argue that if Johnson was not domiciled in Washington at the time of filing *Johnson I*, then diversity of citizenship did not exist when *Johnson I* was commenced and cannot be created by a later change in domicile.

I. Amount in Controversy

Johnson filed an amended complaint on July 6, 2011 ("Amended Complaint"). Defendants consented to the filing of the Amended Complaint. The Amended Complaint explicitly alleges the amount in controversy exceeds $75,000, exclusive of attorney fees and costs. Therefore, the amount in controversy element of diversity jurisdiction is satisfied with the filing of the Amended Complaint, and Defendants' argument is now without merit.[2]

II. Johnson's State of Domicile at the Time of Filing *Johnson I* and *Johnson II*

Defendants assert that Johnson was not domiciled in Washington when she filed *Johnson II* and that she cannot establish diversity of citizenship. Johnson asserts she was domiciled in Oregon when she filed *Johnson I* and Washington when she filed *Johnson II*.

*A.    Legal Standard*

A person is domiciled "in a location where he or she has established a 'fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'" *Lew v. Moss*,

---

[2] At a July 19, 2011, Rule 16 Conference before this court, Defendants and Johnson agreed that the amount in controversy was no longer an issue.

797 F.2d 747, 749-50 (9th Cir. 1986) (quoting *Owens v. Huntling*, 115 F.2d 160, 162 (9th Cir. 1940)). "The existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed." *Id.* at 750. Determination of an individual's state of domicile involves a number of factors, none controlling, including:

> current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes.

*Id.* (citing 13B C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3613, at 544-45 (1984 & Supp. 1986) (citing authorities)). The court evaluates domicile "in terms of objective facts" and "statements of intent are entitled to little weight when in conflict with facts." *Id.* (internal citations omitted).

"A person's old domicile is not lost until a new one is acquired." *Id.* (citing *Barber v. Varleta*, 199 F.2d 419, 423 (9th Cir. 1952)). Changes in domicile occur when there is a confluence of "(a) physical presence at the new location with (b) an intention to remain there indefinitely." *Id.* Intention to remain there "indefinitely" does not require an intent to stay at the new location permanently, but "'a person must intend to make that place his home for the time at least.'" *Harrell v. Kepreos*, No. Civ. 04-3082-CO, 2005 WL 730639, at *1 (D. Or. March 30, 2005) (quoting *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir. 1979)). "'The fact that the plaintiff may later have acquired doubts about remaining in her new home or may have been called upon to leave it is not relevant, so long as the subsequent doubt or circumstance of the leaving does not indicate the intention to make the place the plaintiff's home never existed.'" *Harrel*, 2005 WL 730639 at *1. (quoting *Gallagher v. Philadelphia Transp. Co.*, 185 F.2d 543, 546 (3d Cir. 1950)).

"Domicile continues even [if] a person resides elsewhere . . . until a new domicile is acquired." *Harrel*, 2005 WL 730639 at *2. "However, residence is prima facie evidence of domicile." *Id.* (citing *Anderson v. Watts*, 138 U.S. 694 (1891)).

B.   *Johnson's Domicile at the Time of Filing Johnson I*

At the time of the Accident, Johnson was living in Portland, Oregon. In September 2009, Johnson moved to Battle Ground, Washington to stay with her mother, due, in part, to financial problems caused by the Accident. (Supplemental Decl. of Emily Johnson in Supp. of Pl.'s Sur-Reply to Def.'s Mot. To Dismiss ("Supp. Decl. of EJ"), ¶ 5.) Johnson stayed with her mother for four months. (Supp. Decl. of EJ, ¶ 5.) Johnson did not intend to stay with her mother indefinitely; she hoped and believed that her injury from the Accident would be temporary, that her surgery would be successful, and that she would be able to return to work as a massage therapist. (Supp. Decl. of EJ, ¶ 5.) Johnson returned to Portland, Oregon, around January 2010, rented an apartment, and signed a one-year lease. (Supp. Decl. of EJ, ¶ 5.) At the time she filed *Johnson I* in February 2010, Johnson was living in the apartment in Portland, Oregon. (Supp. Decl. of EJ, ¶ 4.)

Johnson did not intend to stay in Washington indefinitely. Therefore, Johnson's stay with her mother did not change her state of domicile. Johnson illustrated that she did not intend to stay in Washington when she returned to Oregon in January 2010, after her stay with her mother, and signed a one-year lease. (Supp. Decl. of EJ, ¶ 5.) Johnson's declaration of intent is consistent with the facts she presents. Johnson was domiciled in Oregon at the time of filing *Johnson I* because at that time she was living in Oregon, she had established a fixed habitation and she had the intent to remain there permanently or indefinitely. This court finds Johnson was domiciled in Oregon when she filed *Johnson I*.

*C.     Johnson's Domicile at the Time of Filing Johnson II*

When Johnson's lease on her Portland, Oregon, apartment expired, she could not afford to remain living alone. Consequently, on March 3, 2011, she moved in with mother in Battle Ground, Washington. At that time, she had the intent to remain in Washington permanently. (Supp. Decl. of EJ, ¶ 6.) On April 6, 2011, when *Johnson II* was filed, Johnson had been living in Washington for over a month.

After moving to Washington in March 2011, Johnson immediately changed her mailing address to her new address in Battle Ground. (Supp. Decl. of EJ, ¶ 2.) She applied through the Washington School for the Blind for benefits and financial assistance to help her start a new business. (Supp. Decl. of EJ, ¶ 2.; Decl. of Emily Johnson in Supp. of Pl.'s Opp'n to Defs.' Rule 12 Mot. To Dismiss ("Decl. of EJ"), ¶ 7.) She applied for food stamps in Washington. (Supp. Decl. of EJ, ¶ 2.) She re-registered to vote in Washington.[3] (Supp. Decl. of EJ, ¶ 2.) She changed the address for her social security benefits to reflect her Washington address. (Supp. Decl. of EJ, ¶ 2.) She changed the address on her permanent identification card to reflect her Washington address. (Supp. Decl. of EJ, ¶ 2.) These facts support Johnson's declaration of her intent to stay in Washington indefinitely when she moved March 3, 2011, prior to filing *Johnson II*.

Johnson was domiciled in Washington at the time of filing *Johnson II*. At that time, a confluence existed between her physical presence in a new location - she moved to Washington and had been there for over a month - and her intent to remain in Washington indefinitely. Based on

---

[3] Johnson declared she "re-registered" to vote. (Supp. Decl. of EJ, ¶ 2.) This court interprets "re-registered" to mean she was registered to vote in Washington prior to establishing domicile in Oregon, and does not interpret this to mean she registered to vote while staying with her mother during the four months she stayed with her mother in late 2009 and at the beginning of 2010.

these factors, and in light of the fact that residence is *prima facie* evidence of domicile, this court finds Johnson was domiciled in Washington at the time of filing *Johnson II*.

III. *Res Judicata*

Defendants argue that if Johnson was domiciled in Washington at the time of filing *Johnson II*, then she was domiciled in Washington at the time of filing *Johnson I* and she is barred by *res judicata* from bringing this claim because she did not assert diversity as grounds for jurisdiction even though it was available to her at the time of filing *Johnson I*. Defendants argue that this court should adopt the First and Seventh Circuits' interpretation of *res judicata*, which would require plaintiffs "to assert all of their factual and legal theories, including jurisdictional allegations, pertaining to their claim the first time they come to court." *Maher v. GSI Lumonics, Inc.*, 433 F.3d 123, 126 (1st Cir. 2005).[4] However, this court need not address whether it will accept this interpretation of *res judicata*, because diversity jurisdiction was not a jurisdictional allegation available to Johnson at the time she filed *Johnson I*. This court has already found that Johnson was domiciled in Oregon at the time of filing *Johnson I* and in Washington at the time of filing *Johnson II*. At the time Johnson filed *Johnson I*, both she and Defendants were domiciled in Oregon; therefore, she could not have alleged diversity jurisdiction because it did not exist at that time. Defendants' argument is not supported by the facts and is unavailing.

IV. Whether Johnson Established Diversity Jurisdiction

Defendants argue that Johnson's complaint in *Johnson II* should be treated as a motion to amend her complaint in *Johnson I* and, because jurisdiction cannot be created after filing, be

---

[4]This court has not found any cases indicating the Ninth Circuit accepts this interpretation of *res judicata*.

dismissed. Defendants rely on *Oliney v. Gardner*, 771 F.2d 856 (5th Cir. 1985).[5]

In *Oliney*, a Louisiana resident filed a personal injury suit ("*Oliney I*") in federal court against two automobile drivers and their insurance carrier. *Id*. at 857. The Louisiana resident alleged diversity jurisdiction. *Id*. However, diversity of citizenship did not exist at the time the Louisiana resident filed *Oliney I* because at that time both the Lousiana resident and one of the automobile drivers were domiciled in Louisiana. *Id*. On August 6, 1984, prior to the dismissal of *Oliney I*, but after "the motion to dismiss had been filed . . . [the Louisiana resident] filed another complaint [("*Oliney II*")] asserting the same allegations against the same three defendants" in the same federal court. *Id*. The complaint in *Oliney II* was treated as an amendment to the complaint in *Oliney I* because *Oliney I* was still pending when the Louisiana resident filed *Oliney II*. *Id*. at 859. The federal court made this decision to prevent the plaintiff from filing duplicative complaints "to expand the procedural rights he would otherwise enjoy – particularly for the purpose of circumventing the rules pertaining to the amendment of complaints." *Id*. However, the court noted that the Louisiana resident "could have waited until final judgment had been rendered in his first suit and the appeal dismissed before filing a second suit. At that point, any new or changed facts pertaining to diversity jurisdiction could have been properly alleged." *Id*.

Johnson filed *Johnson I* on February 3, 2010. Judge Jones dismissed Johnson's state law negligence claim without prejudice on March 14, 2011. Johnson filed *Johnson II* against Defendants on April 6, 2011, after final judgment had been rendered in *Johnson I* and it was no longer pending. This court need not address whether it will adopt *Oliney* because Johnson properly alleged diversity

---

[5]Defendants note in their memorandum in support of their motion to dismiss that it does not appear that there is a Ninth Circuit case similar to *Oliney*.

jurisdiction; she filed *Johnson II* after *Johnson I* was no longer pending.

*Conclusion*

Defendants' motion to dismiss for lack of jurisdiction is DENIED.

IT IS SO ORDERED.

DATED this 03 day of August, 2011

_____
JOHN V. ACOSTA
United States Magistrate Judge