UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

EMILY JOHNSON,                                         Case No.: 3:11-CV-432-AC

               Plaintiff,                          OPINION AND ORDER

     v.

SCOTT GIBSON and ROBERT
STILLSON,

               Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

      Plaintiff Emily Johnson ("Johnson") filed this action asserting a single negligence claim

against defendants Scott Gibson and Robert Stillson (collectively "Defendants") for injuries she

sustained when she fell while jogging in Tom McCall Waterfront Park (the "Park").  Defendants

move for summary judgment and seek substitution of  the City of Portland ("City"), owner of the

Park and Defendants' employer, as the sole defendant under OR. REV. STAT. 30.265.  Johnson asks

the court to take judicial notice of opinions entered by Judge Jones in her previous action filed in this court in February 2010 (the "First Action").

The court finds that Defendants are proper defendants[1] in this action and denies the motion to substitute the City.[2]  Because Johnson's request for judicial notice is related primarily to Defendants' motion to substitute, and the court is ruling in Johnson's favor on that motion, Johnson's request for judicial notice is denied as moot.  Defendant are properly characterized as "owners" under Oregon's recreational use statute, which Oregon courts have held to be constitutional as applied to individual landowners, and they are entitled to the immunity provided landowners therein.  Accordingly, Defendants are immune from Johnson's negligence claim and are entitled to summary judgment.

*Preliminary Procedural Matter*

For the second time in the ongoing litigation between these parties, Defendants move to substitute the City as sole defendant relying on the Oregon Tort Claims Act (OR. REV. STAT. 30.260-30.300)(the "OTCA").  The version of the OTCA in effect at the time of Johnson's accident on July 16, 2009, and at the time this action was filed on April 6, 2011, provided, in pertinent part, that:

> Subject to the limitations of ORS 30.260 to 30.300, every public body is subject to action or suit for its torts and those of its officers, employees, and agents acting within the scope of their employment or duties, whether arising out of a

---

[1]While the court questions whether the allegations of the operative complaint adequately allege a negligence claim against defendant Stillson, for the purpose of analyzing whether Defendants are entitled to immunity, the court assumes, without deciding, that Stillson is a proper defendant in this action.

[2]The parties have consented to jurisdiction by magistrate in accordance with 28 U.S.C. § 636(c)(1).

governmental or proprietary function . . . .  The sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 shall be an action against the public body only.  The remedy provided by ORS 30.260 to 30.300 is exclusive of any other action or suit against any such officer, employee or agent of a public body whose act or omission within the scope of the officer's, employee's or agent's employment or duties gives rise to the action or suit.  No other form of civil action or suit shall be permitted.  If an action or suit is filed against an officer, employee or agent of a public body, on appropriate motion the public body shall be substituted as the only defendant.

Judge Jones denied Defendants' motion to substitute the City as the sole defendant in the First Action under this version of the OTCA.  *Johnson v. City of Portland*, CV No. 10-117-JO (D. Or. Feb. 10, 2010).  Judge Jones acknowledged the language of the OTCA appeared to mandate the substitution of the City as the sole defendant but then held that such substitution would ultimately violate the "remedy clause" found in Article I, section 10, of the Oregon constitution ("Remedy Clause").  *Id*.

First, Judge Jones found that because cities were immune from tort liability with regard to their governmental functions under common law and Oregon courts consider the creation and maintenance of parks to be a governmental function, Johnson could not bring an action for negligence against the City for injuries she received while jogging in the Park.  *Id*. at 3-4 (quoting *Schlesinger v. City of Portland*, 200 Or. App. 593, 599 (2005)).    Accordingly, he dismissed Johnson's negligence claim against the City, with prejudice.

Judge Jones then addressed the question of whether substitution of the City for the Defendants, which would effectively eliminate any recovery by Johnson for her injuries, violated the Remedy Clause.  The Remedy Clause provides that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation."  The Oregon courts have construed

the Remedy Clause to guarantee a remedy for any injury that existed in common law.  *Id*. at 3 (quoting *Jensen v. Whitlow*, 334 Or. 412, 418 (2002)).  Therefore, the legislature may not abolish a common law remedy without simultaneously providing a "constitutionally adequate substitute remedy."  *Id*.

Judge Jones recognized that "at common law, city employees who negligently performed their job duties did not enjoy . . . immunity" and could be held liable for such negligence under common law.  *Id*. at 4.  He then explained that if he substituted the City for the Defendants, as apparently required under the OTCA, Johnson "would have no remedy in tort, emasculated or otherwise, for the injuries she suffered as a result of the individual defendants' alleged negligence" and that such action would "violate the remedy clause of Article I, section 10."  Consequently, he denied Defendants' motion to substitute the City as the sole defendant and allowed Johnson to proceed on her negligence claims against the Defendants.  *Id*. at 5.

The current version of the OTCA, which became effective on January 1, 2012, and was in effect when Defendants filed their motion to substitute on April 5, 2012, provides, in pertinent part, that:

> (1)  Subject to the limitations of ORS 30.260-30.300, every public body is subject to civil action for its torts and those of its officers, employees and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function . . . .

> (2)  The sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 is an action under ORS 30.260 to 30.300.  The remedy provided by ORS 30.260 to 30.300 is exclusive of any other action against any such officer, employee or agent of a public body whose act or omission within the scope of the officer's, employee's or agent's employment or duties gives rise to the action.  No other form of civil action is permitted.

(3)  If an action under ORS 30.260 to 30.300 alleges damage in an amount equal to or less than the damages allowed under ORS 30.271, 30.272 or 30.273, the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 is an action against the public body.  If an action is filed against an officer, employee or agent of a public body, and the plaintiff alleges damages in an amount equal to or less than the damages allowed under ORS 30.271, 30.272 or 30.273, the court upon motion shall substitute the public body as the defendant. . . .

(4)  If an action under ORS 30.260 to 30.300 alleges damages in an amount greater than the damages allowed under ORS 30.271, 30.272 or 30.273, the action may be brought and maintained against an officer, employee or agent of a public body, whether or not the public body is also named as a defendant.  An action brought under this subsection is subject to the limitations on damages imposed under ORS 30.271, 30.272 or 30.273, and the total combined amount recovered in the action may not exceed those limitations for a singled accident or occurrence without regard to the number or types of defendants named in the action.

OR. REV. STAT.  30.265 (2012).

OR. REV. STAT. 30.272, which limits liability for local public bodies for personal injury and death provides, in pertinent part, that:

(1)  The limitations imposed by this section apply to claims that:

(a)  Are subject to ORS 30.260 to 30.300;

(b)  Are made against a local public body, or against an officer, employee or agent of a local public body acting within the person's scope of employment or duties;

(c)  Arise out of a single accident or occurrence; and

(d)  Are not claims for damage to or destruction of property.

(2)  The liability of a local public body, and the liability of the public body's officers, employees and agents acting within the scope of their employment or duties, to any single claimant for claims described in subsection (1) of this section may not exceed:

(a) $500,000 for causes of action arising on or after July 1, 2009, and before July 1, 2010.

OR. REV. STAT. 30.272 (2012).  The impetus for the revisions to the OTCA were two cases in which the Oregon courts held that requiring substitution of a government body as the sole defendant in a negligence action against government employees violated the Remedy Clause by entirely eliminating a cause of action against the individuals and depriving the plaintiff of a constitutionally adequate remedy for their injuries, *Clarke v. Oregon Health Sciences Univ.*, 343 Or. 581, 585 (2007), and *Ackerman v. OHSU Medical Group*, 233 Or. App. 511, 533 (2010).

In *Clarke*, the Oregon Supreme Court addressed the issue of "whether the Oregon Tort Claims Act . . . , specifically ORS 30.265(1) and ORS 30.270(1), as applied to this case, violates the Remedy Clause of Article I, section 10, of the Oregon Constitution."  *Clarke*, 343 Or. at 585.  The parents of an infant who suffered brain damage as the result of negligent treatment by individuals employed by a hospital filed an action on the infant's behalf against the hospital and the individuals who treated the infant.  *Id*. at 586.  The trial court granted the defendants' motion to substitute the hospital as the sole defendant in the action pursuant to OR. REV. STAT. 30.265,  and then limited the plaintiff's recovery to $200,000, the maximum allowed under OR. REV. STAT. 30.270(1) for an action against the state.  *Id*. at 586-87.  The plaintiff appealed, challenging the trial court's substitution of the hospital and limitation of damages as violating plaintiff's right to a remedy.  *Id*. at 587.  The appellate court found that the limitation of damages in an action against the state prevented plaintiff from meaningfully pursuing her negligence claims against the individuals, which existed at common law, and therefore, violated the Remedy Clause.  *Id*. at 587-88.  The appellate court remanded the action to the trial court with directions to reinstate the claims against the individual defendants.  *Id*. at 588.  The defendants then appealed to the Oregon Supreme Court.  *Id*.

The Oregon Supreme Court affirmed the appellate court, finding that "the application of

ORS 30.265(1) and ORS 30.270(1) in this case violates Article I, section 10." *Id*. at 586.   The court

applied the two-part test it created in *Smothers v. Gresham Transfer, Inc.*, 332 Or. 83 (2001)[3], and

found that because the hospital was an instrumentality of the state and would have been immune

from liability at common law, the legislature had the authority to limit the amount of damages a

plaintiff could recover from the state without violation the remedy clause. *Clarke*, 343 Or. at 610.

However, the requirement in OR. REV. STAT 30.265 that all actions against public employees be

brought against the public body, and subject to the $200,000 cap, effectively eliminated a plaintiff's

preexisting right to obtain full recovery for their injuries from those who negligently caused their

injuries in violation of the Remedy Clause.   The court explained that:

> the elimination of a cause of action against public employees or agents in ORS
> 30.265(1), as applied to plaintiff's claim against the individual defendants, violates
> the Remedy Clause of Article I, section 10, because the substituted remedy against
> the public body, as specified in ORS 30.270(1), is an emasculated version of the
> remedy that was available at common law.

*Id*.

The *Ackerman* court relied heavily on *Clarke* and held that capping a plaintiff's recovery to

the $400,000 available under the OTCA violated the Remedy Clause when viewed in light of the fact

that the jury awarded the plaintiff $1,412,000 in damages at trial.  *Ackerman*, 233 Or. App. at 533.

In *Ackerman*, the plaintiff filed an action against a physician who performed surgery to repair a disc

injury in plaintiff's neck, as well as the medical group and hospital that employed the physician,

---

[3]*Smothers* set forth a framework for determining when a legislative action violates the
Remedy Clause.  The first consideration is whether the plaintiff alleged a claim that was recognized
in Oregon under common law for an injury to an absolute right.  If such a claim was alleged and the
legislature abolished the common law claim, the legislature must have provided a constitutionally
adequate substitute remedy for the injury to avoid violation of the Remedy Clause.  *Smothers*, 332
Or. at 124.

asserting that the physician's negligence resulted in plaintiff's severe injury. *Id*. at 514. After trial, the trial court entered judgment in favor of plaintiff for the full amount of the $1,412,000 jury verdict, but specifying that as a public body, the hospital was only liable for $200,000 of that amount under the OTCA. *Id*. at 513. On appeal, the appellate court found that the medical group was an instrumentality of the state that would have been protected by sovereign immunity at common law. As such, the legislative limitation on recovery from the medical group under the OTCA to $200,000 did not offend the Remedy Clause. *Id*. at 526. The court then addressed defendants' motion to substitute the hospital for the negligent physician as required under OR. REV. STAT 30.265.

The court recognized the physician clearly fell within the scope of the OTCA's substitution and cap statutes and that plaintiff would have had an uncapped remedy against the physician at common law. *Id*. The issue then became whether application of the OTCA provisions with regard to the physician violated the Remedy Clause. The court found that the $400,000 available to plaintiff from the hospital and the medical group was not constitutionally adequate in that it did not sufficiently compensate plaintiff for his $1,412,000 loss. In reaching this conclusion, the court considered the amount of the award available to the plaintiff under the OTCA, the ratio between the jury award and the capped amount, and the amount of the difference between the jury award and the capped amount. *Id*. at 529-30. Consequently, the application of OTCA to the physician in this instance violated the Remedy Clause. *Id*. at 533. The court denied the defendants' motion to substitute the hospital for the negligent physician and found that the hospital was liable for $200,000, the medical group liable for $200,000, and the physician liable for $1,012,000. *Id*.

The legislative history for the current version of the OTCA contains many references to *Clarke* and *Ackerman*. Roy Pulvers, an attorney speaking to the Senate and House Judiciary

Committees in support of SB 397, the bill amending the OTCA to eliminate the required substitution

in cases that exceeded the caps, explained that:

> The purpose of this bill is twofold: 1) to conform the statutes under the Oregon Tort Claims Act ("OTCA") to the apparent practice in the courts following the Oregon Supreme Court's decision in *Clarke v. OHSU*, 343 Or 581, 175 P3d 418 (2007); and 2) to address the constitutional concern articulated by the Oregon Supreme Court in *Clarke* that the so-called "substitution" amendments to the OTCA in 1991, which provided that the sole cause of action was against the public body and that the body could be substituted in for a named individual as a defendant, had *completely eliminated* the asserted historic right of an injured person to sue the individual who caused the harm. Along with the substantial raise in the tort claim limits adopted by the 2009 Legislative Assembly, SB 397 will further the legislature's underlying goal of enacting a tort claims cap that may prove most responsive overall to the constitutional concerns raised by the Oregon Supreme Court in *Clarke v. OHSU*.

> \* \* \*

> The court in *Clarke* concluded that the 1991 change had *entirely eliminated* a cause of action against the individual and that this was relevant to its decision that the OTCA, which since 1991 only provided for a limited claim and *only against the government body*, violated the remedy clause by not giving the injured plaintiff a constitutionally adequate remedy against the individual who had cause the harm.

> In order to rectify that problem, the Oregon Supreme Court in *Clarke*, and the Oregon Court of Appeals thereafter in *Ackerman v. OHSU* (another case under the old, pre-2009 cap limits), concluded that a remedy against the individual was required in cases in which the limited remedy against the government was not adequate. Thus in *Ackerman*, for example, judgment for the amount of the judgment above the cap was entered against the individual defendant.

> SB 397 would return the law to its status prior to the 1991 OTCA amendments, for cases in which the amount of damages alleged exceeds the OTCA cap limits. This would address the Supreme Court's apparent concern about the adverse constitutional effect of the 1991 amendments by restoring a remedy against the individual. SB 397 also would recognize that, as a practical matter after *Clarke* and *Ackerman*, we are given to understand that courts reasonably enough are reluctant or unwilling to remove individuals as defendants if the amount of the damages claimed exceeds the OTCA cap limits.

(Tienson Decl. Ex. C at 1-3, Ex. D at 1-3.)

Similarly, Amy Wayson, Vice President and General Counsel of Oregon Health & Science University testified before both committees and stated that the reason for the proposed changes to the OTCA was:

> to respond to the apparent concerns of the Oregon Supreme Court in its decision in *Clarke v. OHSU*, 343 Or 581, 175 P3d 418 (2007) that because the substitution provision completely <u>eliminates</u> an injured person's ability to sue an individual, (a right that generally existed before the adoption of the Oregon Constitution) in very high damages cases, that provision may leave the claimant with an inadequate remedy in violation of the Oregon Constitution.  You will recall that the Supreme Court in *Clarke* found that, in that very high damages case, the then very low OTCA cap limits of $200,000 per claim and $500,000 per occurrence were not adequate to provide Jordaan Clarke with an adequate remedy.  It was in response to the Supreme Court's emphasis on the great disparity between those low cap amounts and the damages suffered by Jordaan Clarke that the 2009 Legislature very substantially raised the amounts of the OTCA caps to today's limits.
>
> In addition to emphasizing the damages versus cap amounts, however, the *Clarke* court expressed concern about the complete elimination of the right to sue the individual.  Passage of SB 397 would respond to this concern of the Supreme Court, and further establish that the current OTCA caps are consistent with the Oregon Constitution.

(Tienson Decl. Ex. E at 2, Ex. G at 2.)

Finally, the Staff Measure Summary prepared for the Senate Judiciary Committee by Cheyenne Ross, Committee Counsel, represents that the "[m]easure continues to make [the] OTCA consistent with [the] holding in [the] *Clarke* case."  (Tienson Decl. Ex. B.)  Ross further explains that "Senate Bill 397 A is the legislature's further response to the Court's concern about the elimination of the cause of action against the individual.  It allows a plaintiff to proceed against a named individual or individuals when the amount of damages alleged exceeds the cap, without relieving the public body of its obligations to indemnify."  (Tienson Decl. Ex. B.)

 The case law, statutes, and legislative history discussed above make it clear that as of

December 28, 2007, the date *Clarke* was filed, the law in Oregon was that when a plaintiff asserts a claim against a public body and a negligent agent or employee of that public body and the damage claim measurably exceeds the OTCA cap for the public body, the plaintiff must be able to proceed against the negligent individual to avoid a violation of the Remedy Clause.  This court finds no reason in this case to vary from the clear tenets of the Oregon courts and legislature.

Johnson's cause of action arose on July 16, 2009, the date she fell while jogging the Park. The version of the complaint in effect at the time Defendants filed their motion to substitute (the "Amended Complaint") specifically alleges that "the amount in controversy exceeds the sum of $75,000" for jurisdictional purposes but then generally seeks "economic and noneconomic damages in amounts to be proven at trial."  (Am. Compl. ¶¶ 6, 13.)  In the Amended Complaint, Johnson describes herself prior to the fall as "a young woman, who despite being legally blind due to macular degeneration in her eyes, was a very physically active person who participated in collegiate sports" and her resulting injuries as "severe, permanent, and disabling which have prevented her from working, participating, and/or enjoying her normal and customary daily activities, interfered with her enjoyment of life, and caused her severe physical, mental, and emotional distress."  (Am. Compl. ¶¶ 2, 12.)  Considering Johnson's age, her activities before the fall and the injuries caused by the fall, and viewing the allegations in Johnson's favor, the Amended Complaint alleges damages that could reasonably exceed the $500,000 limit set forth in OR. REV. STAT. 30.272.  This view is supported by Johnson's Second Amended Complaint filed on November 1, 2012, with Defendants' consent and leave of the court (the "Current Complaint"), which specifically alleges that the "amount in controversy exceeds the sum of $500,000" and seeks "the sum of $250,000 for past and future economic damages and $750,000 in noneconomic damages."  (Second Am. Comp. ¶¶ 6, 13.)

Page 11 - OPINION AND ORDER                                              *{SIB}*

Consequently, Johnson's claim alleges damages in an amount greater than $500,000, clearly allowing her to maintain an action against Defendants under the current version of the OTCA. Similarly, under the teachings of *Clarke* and *Ackerman*, Johnson should be allowed to pursue her claims against Defendants under the prior version of the OTCA as Johnson's ability to recover against the City is limited by the cap and her claim for damages far exceeds the cap, thereby making the substitute remedy offered her under the OTCA not constitutionally adequate. This court agrees with Judge Jones's prior ruling that substitution of the City for the individual defendants in this case is not appropriate.

Defendants' motion to substitute the City as the sole defendant is denied. Johnson is entitled to proceed against the Defendants in this action. Johnson's Request for the Court to Take Judicial Notice of Judge Jones's ruling in the First Action is denied as moot. Johnson offered those rulings primarily in support of her argument that Defendants' motion to substitute the City as sole defendant should be denied. In light of the fact that the court has ruled in her favor on those issues without the need to take judicial notice of Judge Jones's previous rulings and considered them merely for their precedential value, the court need not decide whether such rulings are appropriate for judicial notice in this action. Accordingly, Johnson's request for judicial notice is denied as moot.

*Legal Standard*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2012). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c) (2012). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Discussion*

Defendants move for summary judgment asserting they are entitled to immunity under the Public Use of Lands Act (OR. REV. STAT. 105.672 - 105.696) (the "Act"). Johnson concedes the City is immune from liability under the Act but argues that Defendants do not qualify as "owners" under the Act and, therefore, are not entitled to protection under the Act. Alternatively, Johnson asserts that the Act, as applied to Defendants, violates the Remedy Clause.

I.  Who is an "Owner" under the Act?

The Act provides, in relevant part, that:

> an owner of land is not liable in contract or tort for any personal injury, death or property damage that arises out of the use of the land for recreational purposes, woodcutting or the harvest of special forest products when the owner of land either directly or indirectly permits any person to use the land for recreational purposes, woodcutting or the harvest of special forest products. The limitation on liability provided by this section applies if the principal purpose for entry upon the land is for recreational purposes, woodcutting or the harvest of special forest products, and is not affected if the injury, death or damage occurs while the person entering land is engaging in activities other than the use of the land for recreational purposes, woodcutting or the harvest of special forest products.

OR. REV. STAT. 105.682(1) (2007).[4] The limitation on liability applies only if the injury or damage is unintentional and the owner makes no charge for permission to use the land. OR. REV. STAT. 105.688 (2007). The term "owner" is defined in the Act as "the possessor of any interest in any land, including but not limited to possession of a fee title" and includes "a tenant, lessee, occupant, or other person in possession of the land." OR. REV. STAT. 105.672(3)(2007). The term "land" is defined as "all real property, whether publicly or privately owned." OR. REV. STAT.

---

[4]Both parties reference and rely on the version of the Act in effect when Johnson suffered her injuries on July 16, 2009. As the current version of the Act is not different in any way relevant to this action and the parties apparently concede that the 2009 version applies to this action, the court will reference the statutes in effect in 2009 in this Opinion.

105.672(4)(2007).  The legislature explained the Act was enacted to further:

> the public policy of the State of Oregon to encourage owners of land to make their land available to the public for recreational purposes, for woodcutting and for the harvest of special forest products by limiting their liability toward persons entering thereon for such purposes and by protecting their interests in their land from the extinguishment of any such interest or the acquisition by the public of any right to use or continue the use of such land for recreational purposes, woodcutting or the harvest of special forest products.

OR. REV. STAT. 105.676 (2007).

Johnson was jogging in the Park when she was injured.  Jogging has been identified as a recreational activity for the purposes of the Act.  *Conant v. Stroup*, 183 Or. App. 270, 282 (2002)(plaintiff, who was injured while jogging on defendant's land, was using defendant's land for recreational purposes).  There is no dispute the Park is land covered by the Act or that Johnson was not charged for her use of the Park.  The only question before the court is whether Defendants qualify as "owners" for the purposes of the Act.

Johnson alleges that the City "owned, operated, and maintained" the Park and that Defendants "were and are employees of the City of Portland and were responsible for maintenance and/or repair of the sprinkler system" in the Park at the time of her injury.  (Second Am Compl. ¶¶ 1, 5).  At least one Oregon court has held that those who maintain and operate improvements on land covered by the Act qualify as "owners" under the Act.

In *Brewer v. Dept. of Fish and Wildlife*, 167 Or. App. 173, 176 (2000), plaintiffs filed a wrongful death action against various state agencies, including the Oregon Fish and Wildlife Commission ("Commission"), and the Swackhammer Ditch Improvement District ("Swackhammer"), for damages related to the deaths of two individuals who drowned while swimming below a fish migration dam.  Plaintiffs alleged the defendants were negligent in building

and maintaining the dam in such a manner that it created a dangerous undertow in which the decedents were caught, causing injuries which resulted in their death. *Id*. All of the defendants moved to dismiss the action claim immunity under the Act. *Id*. at 177. The trial court granted the motion and dismissed the case. Plaintiffs appealed asserting that not all of the defendants fell within the protection of the Act. *Id*. Plaintiffs conceded the state agency that owned the land on which the dam was located was covered by the Act but argued that the Commission, who constructed and owned the dam, and Swackhammer, who maintained and operated the dam, were not "owners" of the land, therefore, not entitled to protection under the Act. *Id*.

The appellate court, noting that the definition of "owner" in the Act had not yet been interpreted by the courts, relied on the case of *Denton v. L.W. Vail Co.*, 23 Or. App. 28, 30-341 (1975), in which the court found that contractors constructing a road on behalf of the federal government and on land owned by the federal government were "persons in possession of the land" and, therefore, owners under a previous version of the Act.[5] *Brewer*, 167 Or. App. at 179. The court then explained that:

> [a]lthough the scope of the Act has changed since *Denton* was decided, the key language of the definition of "owner" has not. In *Denton*, we found that those who were constructing improvements on land were "owners" within the meaning of the definition found in the Act. If those who merely construct improvements on land qualify as owners, certainly those who maintain and operate improvements on land also fall within the scope of that definition. The trial court correctly concluded that ODFW and Swackhammer come within the ambit of the Act for purposes of immunity.

*Id*.

_____

[5]The definition of "owner" considered by the court in *Denton* provided that "'owner' means the possessor of a fee title interest in any land, a tenant, lessee, occupant or other person in possession of the land." *Brewer*, 167 Or. App. 179 n.1.

Here, Johnson alleges that Defendants were responsible for the maintenance and/or repair of the sprinkler system in the Park.   Accordingly, Defendants are in the same position as Swackhammer, who maintained and operated the dam.  Under the teachings of *Brewer*, it is evident that Defendants fall within the scope of the definition of "owner" as defined in the Act and are entitled to immunity.

Johnson contends that *Brewer* is distinguishable in that the courts held that state agencies, not individual employees, were owners under the Act.  First, the court identified the defendants as "numerous state agencies (state defendants) and the Swackhammer Ditch Improvement District (Swackhammer)".  *Id*. at 176.  The court distinguished Swackhammer from the state agencies, thereby establishing, at least by implication, that Swackhammer was not a state agency. Furthermore, the court later noted that Swackhammer does not argue it is an instrumentality of the state and refuses to express an opinion on whether or not Swackhammer "is, in fact, the type of entity that may share the state's immunity."   *Id*. at 181 n.2. Second, the fact that the court did not specifically  address the issue of whether an individual employee tasked with maintaining land owned by their employer qualify as an "owner" under the Act does not equate to a finding that such individuals are not "owners".  The language used in Brewer – "those who maintain and operate improvements on land also fall within the scope of that definition" – can reasonably be construed to include the entity charged with maintenance as well as the employees specifically performing such maintenance.  This interpretation is further supported by the fact that the maintenance of land owned by an entity may only be accomplished through the use of employees and failure to extend immunity to an owners' employees defeats the provision of immunity envisioned by the Act.

Johnson also argues that a finding by this court that Defendants are "owners" under the Act

effectively overrules Judge Jones's decision on this issue.    A careful reading of Judge Jones's decision, and the briefing on the motion before Judge Jones, make it clear that Judge Jones addressed only the question of whether substitution of the City as the sole defendant under OR. REV. STAT. 30.265(1) violated the Remedy Clause.  Judge Jones briefly mentioned the City's immunity under the Act as support for his finding that such substitution would leave Johnson without a  remedy in tort, but did not specifically consider whether Defendants would be considered "owners" under the Act.  Accordingly, Judge Jones's prior ruling is not relevant to nor effected by this court's ruling.

Finally, Johnson also argues that *Brewer* is no longer good law in light of the fact it was issued before *Smothers* and the acknowledgment in *Schlesinger v. City of Portland*, 200 Or. App. 593, 600 n.4 (2005), that the operative portions of a number of cases relied on in *Brewer* have been "disavowed by the Supreme Court."  The court in *Smothers* addressed the issue of whether the exclusive nature of the workers' compensation remedy violated the Remedy Clause.  The question of who qualifies as an "owner" under the Act was not at issue in *Smothers*.  Similarly, the *Schlesinger* court, while considering the issue of whether the immunity provided to the City under the Act violated the Remedy Clause, did not consider whether the plaintiff had a right to pursue a negligence claim against the city employees who negligently designed and maintained a park owned by the City.  In fact, the court refused to address the issue because the plaintiff had not named the city employees as defendants.  Neither *Smothers* nor *Schlesinger* raise any doubt about the precedential value of *Brewer* on the issue of whether employees responsible for maintaining and operating improvements on land for their employer are properly considered "owners" under the Act.

## II.  Does Act Violate Remedy Clause?

Having determined that Defendants are entitled to immunity as "owners" under the Act, the

court must now address Johnson's argument that such immunity violates the Remedy Clause. Johnson again argues that because she would have had a cause of action at common law against Defendants for their negligence in maintaining the Park, the immunity provided under the Act, which deprives her of any remedy against Defendants, violates the Remedy Clause. Defendants rely on *Brewer* to support their contention that the Act does not violate the Remedy Clause.

In *Brewer*, the court considered the question of whether the Act, which appears to abolish a right of action against individual landowners for injuries incurred as a result of recreational use of the individual's land, violates the Remedy Clause in this scenario. The court first found that the Act, as applied to public bodies, did not violate the Remedy Clause as the public bodies already enjoyed sovereign immunity with regard to claims of this nature. *Brewer*, 167 Or. App. at 183. It then applied the rule in existence at that time – that the legislature could not "abolish a remedy and at the same time recognize the existence of a right" without violating the Remedy Clause – and found that the Act as applied to individual landowners also did not violate the Remedy Clause. *Id*. at 183, quoting *Hale v. Port of Portland*, 308 Or. 508, 519 (1989). The court relied on the policy statement offered in OR. REV. STAT. 105.676 in reasoning:

> [t]he trade-off represented by this policy is manifest. The owner of land opened for recreational use in accordance with the Act gives up exclusive enjoyment of the land and, in return, is insulated from certain types of liability for injuries that may occur there. The users of recreational lands opened in accordance with the Act give up their rights to sue land owners for certain types of injuries but gain the benefit of using land for recreation that otherwise would not be available to them.

*Brewer*, 167 Or. App. at 188-89. The court held that the legislative choice of "permitting recreational landowners to limit their liability in the event that they choose to open their lands to the public for recreational purposes without charge . . . strikes an acceptable balance, by conferring

benefits and certain detriments on both the landowners involved, and on the recreational users of that land.  We conclude that the Act does not violate Article I, section 10, of the Oregon Constitution." *Id*. at 190-91.

Johnson argues that *Brewer* is no longer good law, relying on the more recent cases of *Schlesinger, Smothers* and *Storm*.  In *Schlesinger*, the Oregon Court of Appeals considered a claim against the City for injuries suffered by a pedestrian while walking her dog in a public park.  The court found that the City, as owner of the park, was entitled to immunity under the Act and that the Act, as applied to the City, did not violate the Remedy Clause because a negligence action against a city for injuries received in a park was not recognized at common law.  *Schlesinger*, 200 Or. App. at 599.  The court characterized this holding as consistent with *Brewer* on the liability of the state defendants, but refused to consider the "detriment/benefit calculus" applied in *Brewer* with regard to Swackhammer, which did not enjoy the same immunity as the state defendants under common law.  *Id*. at 600 n.4.  Instead, the court called such analysis into question, considering it was based on cases subsequently disavowed by the Supreme Court in *Storm v. McClung*, 334 Or. 210 (2002), and *Smothers*.

Both *Smothers* and *Storm* addressed the issue of whether the exclusivity of Oregon's workers compensation statutes violated the Remedy Clause.  The Oregon Supreme Court expressed concern that it "had not developed a consistent body of law interpreting the remedy clause of Article I, section 10" and then engaged in an extensive discussion of the history of the Remedy Clause, the purpose behind it, the proper interpretation of it, and the case law surrounding it.  *Smothers*, 332 Or. at 90.  The court explained the basic purpose of the Remedy Clause "is to protect absolute common-law rights respecting person, property, and reputation, as those rights existed when the Oregon

Constitution was drafted in 1857." *Id*. at 118.  Consequently, the court disavowed its prior holdings,

"beginning with *Perozzi*, that the legislature can abolish or alter absolute rights respecting person,

property, or reputation that existed when the Oregon Constitution was drafted without violating the

remedy clause in Article I, section 10." *Id*. at 119.  Similarly, the court later stated :

> If the legislature constitutionally cannot abolish or alter those rights directly, then it
> cannot abolish them indirectly by defining narrowly what constitutes an injury to
> those rights.  We disavow the holding in *Sealy* that the legislature constitutionally is
> authorized to define what constitutes an injury to absolute rights respecting person,
> property, and reputation that are protected by Article I, section 10.

*Id*. at 123.  In *Storm*, the Supreme Court again recognized the lack of clearly established and

consistent case law regarding the Remedy Clause identified in *Smothers* and specifically rejected the

absence of a distinction between rights existing at common law and those legislatively created.

*Storm*, 334 Or. at 221.  The *Storm* court explained that:

> In *Neher*, the court, relying on *Hale* and *Noonan*, assumed that Article I,
> section 10, afforded protection to any cause of action regardless of whether that cause
> of action existed at common law or was legislatively created.  As the foregoing
> analysis demonstrates, that assumption was incorrect.  The holding in *Neher* that the
> immunity provision in ORS 30.265(3)(a) that barred plaintiff's statutory wrongful
> death action denied the plaintiff a remedy in violation of Article I, section 10, was
> error and is disavowed.

*Storm*, 334 Or. at 222-23.

The Oregon Supreme Court did not specifically disavow, or even reference, *Brewer* or the

detriment/benefit calculus applied in *Brewer* in either *Smothers* or *Storm*, despite the fact that the

courts engaged in detailed discussions of the Remedy Clause and other Oregon cases that incorrectly

analyzed claims of various legislative acts violating the Remedy Clause.  Additionally, the

*Schlesinger* court, while noting that the "operative portions of many of the case that we relied on in

our analysis of the plaintiff's claims against defendant Swackhammer Ditch Improvement District

have been disavowed by the Supreme Court", also acknowledged that "[t]he Supreme Court denied review in *Brewer* and so *Brewer* remains good law." *Schlesinger*, 200 Or. App. at 600 n.4. In fact, the Supreme Court denied review of *Brewer* on October 1, 2002, after it specifically disavowed portions of cases relied on by *Brewer* court in *Smothers*, decided May 10, 2001, and *Storm*, decided June 7, 2002. *Brewer v. Dept. of Fish and Wildlife*, 334 Or. 693 (2002). Had the Supreme Court been concerned about the ultimate rulings in *Brewer*, including the detriment/benefit calculus applied to Swackhammer to support the finding that the Act, as applied to a private landowner, did not violate the Act, it clearly could have addressed those rulings in *Smothers* or *Storm* or by granting review in the appeal of *Brewer*. The fact that the Oregon Supreme Court has seen fit to allow the rulings in *Brewer* to remain unquestioned in at least two cases in which it expressed concern with some of the tangential issues addressed in *Brewer*, and denied review of the ultimate rulings in *Brewer* after discussing the Remedy Clause in detail, supports a conclusion that the detriment/benefit calculus on which the *Brewer* court relied in finding that the application of the Act to a private landowner does not violate the Remedy Clause is still good law.

This conclusion is further supported by the reference to, and reliance on, *Brewer* in two appellate court decisions rendered after *Smothers* and *Storm*. In *Conant v. Stroup*, 183 Or. App. 270 (2002), the Oregon appellate court relied on *Brewer's* discussion of the purpose of the Act and the trade made by private landowners making their lands available to the general public in exchange for immunity for liability resulting from use of that property in finding that the Act provided immunity to private landowners against a claim of negligence filed by an individual injured while jogging on the landowner's property held open to the public. Similarly, in *Liberty v. Oregon*, 200 Or. App. 607, 620 (2005) *rev'd on other grounds*, 342 Or. 11 (2006), decided *en banc* after *Schlesinger*, the court

Page 22 - OPINION AND ORDER                                                            *{SIB}*

rejected out-of-hand the plaintiff's argument that the Act violated the Remedy Clause relying on *Brewer* and the balance of interests, or " legitimate trade-off" discussion contained therein.

The Oregon courts have clearly and consistently determined that the Act, as applied to private landowners, permissibly alters a right of action based on a legitimate balancing of competing interests in which certain benefits and detriments are conferred on both landowners willing to hold their property open for recreational use and on the recreational users of such property. Accordingly, the Act, as applied to both public and private landowners, does not violate the Remedy Clause. Defendants are properly characterized as "owners" under the Act and are, therefore, entitled to the immunity offered by the Act. Accordingly, Defendants are entitled to summary judgment on Johnson's claims for negligent maintenance and repair of the Park. Because the court has found that Defendants' are entitled to immunity under the Act, it need not, and will not, address the merits of Johnson's claim against Defendants.

## Conclusion

Defendants' motion (#32) to substitute the City as the sole defendant is DENIED. Johnson's motion (#39) for judicial notice of Judge Jones's rulings in the First Action is DENIED as moot. Defendants' motion (#34) for summary judgment based on immunity provided by the Act is GRANTED.

DATED this 14th day of January, 2013.

/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge